IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| FORT LANE VILLAGE, L.L.C.,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVELERS INDEMNITY COMPANY OF AMERICA,<br><br>Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 1:10-CV-37-TC |

Fort Lane Village LLC (a commercial property owner and property management company) has sued its insurance company, Travelers Casualty Insurance Company of America, for coverage of fire damage that destroyed a vacant home in Layton in October 2009. Travelers denied coverage based on a provision of the policy excluding damages resulting from vandalism occurring at a time when the insured building had been vacant for more than 60 days before the event occurred. Fort Lane asserts claims for breach of contract (for failure to pay the property damage claim), breach of the implied covenant of good faith and fair dealing (bad faith claim), negligence (failing to investigate whether the policy would provide proper coverage for the property), and unjust enrichment (premiums paid but no claim paid).

Travelers moves for summary judgment on all four claims. In defense against Fort Lane's insurance coverage claim, Travelers contends that arson is included in the unambiguous term "vandalism," and that, even viewing the evidence in a light most favorable to Fort Lane, the

evidence does not support any theory of causation for the fire other than arson. Travelers also contends that Fort Lane's tort and contract claims fail as a matter of law. Fort Lane filed a cross motion for <u>partial</u> summary judgment, in which Fort Lane addresses only the policy interpretation issue, contending that arson does not fall within the definition of "vandalism."

Based on a close reading of the Policy's language and applicable case law, the court finds that Fort Lane Village's interpretation of the Policy is correct as a matter of law and so GRANTS Fort Lane Village's Motion for Partial Summary Judgment. However, Travelers is entitled to summary judgment on Fort Lane Village's claims for negligence, breach of the implied covenant of fair dealing, and unjust enrichment. Accordingly Defendant Travelers' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.[1]

## **FACTUAL BACKGROUND**[2]

In January 2007, Fort Lane requested that Travelers add the property (208 East Gentile Street, Layton, Utah, which is adjacent to a shopping mall owned by Fort Lane) to Fort Lane's business owner's property and casualty insurance policy ("Policy"). At the time the request was submitted, the building on the property was occupied, as Fort Lane represented to Travelers. (<u>See</u> Fort Lane's Commercial Policy Change Request (Ex. 2 to Travelers' Combined Mem.) (listing property tenants as Wilde Arrow and Izatt Photo).) According to Fort Lane, the property

---

[1] Plaintiff also filed a Motion In Limine (Docket No. 17) and a Motion to Strike (Docket No. 32) concerning the expert opinion and appraisal issued by Traveler's expert, Richard Cook. Neither party relies on the expert witness evidence to argue its position in the summary judgment motions. The motions are premature and are DENIED WITHOUT PREJUDICE.

[2] The facts are undisputed, so the court will not repeat them here unless they are necessary to the analysis. For a comprehensive statement of facts, see pages ii to xi of Travelers' Combined Memorandum (Docket No. 20).

was not actually added to the Policy until December 2008. (See Fort Lane's Mem. Opp'n (Docket No. 39) at 4 (stating fact without providing supporting cite).) Fort Lane renewed the Policy at the beginning of each succeeding policy period, the latest being February 1, 2009, through February 1, 2010.

Beginning in May 2008, and continuing until at least 60 days before the fire, the building was vacant. Fort Lane never told Travelers that the building was vacant. Travelers never independently confirmed whether the insured property was occupied.

On October 20, 2009, a fire destroyed the building. At the time of the fire, Fort Lane had paid all premiums due on the Policy. After the fire, Fort Lane submitted a notice of loss to Travelers. Travelers then hired fire inspector Jerry Thompson to perform an origin and cause inspection and issue a report on the cause of the fire.

Mr. Thompson determined—after examining the property, police and fire reports, and interviewing Layton City Fire Marshal Dean Hunt—that the fire was "human caused." (See Affidavit of Jerry Thompson (Ex. 5 to Travelers' Combined Mem.) ¶¶ 9-10.) In his report, he stated:

> <u>No known accidental ignition sources, including electrical and natural gas utilities were observed within the structure.</u> The structure had been vacant for a year or longer and <u>the utilities had been turned "off"</u> for approximately the same amount of time. The fire patterns clearly indicate that the southeast corner bedroom, which was totally destroyed by fire, was one of the rooms of origin. Evidence of <u>several other small non-connecting fires</u> in the hallway and in another bedroom was observed. Fire Marshal Hunt indicated that for over a year there have been problems with either transients or juveniles entering, staying overnight and then leaving the structure. Evidence of vandalism was observed and it was apparent that the vandalism has continued to occur over a long period of time. Those individuals have not been identified by the local police or fire department. There had been plans by the city to have the house demolished. My findings agree with those of Fire Marshal Hunt that <u>this was a human caused fire set by person or</u>

3

persons unknown.

(Thompson Aff. ¶ 9 (emphasis added) (quoting from his report).)

In a November 20, 2009 letter to Fort Lane, Travelers denied coverage for the loss for the following reason:

> We have completed our investigation and have carefully considered the evidence concerning the loss . . . . It has been determined that the fire that occurred at 208 E. Gentile in Layton Utah was the result of vandalism and malicious mischief. Unfortunately, damages resulting from this cause are specifically excluded by the terms of the policy when the building has been vacant for more than 60 days.

(Denial Letter, Ex. E to Travelers' Combined Mem. (Docket No. 20).) The Policy provision upon which Travelers relied, Section A.5.d., states in its entirety as follows:

> We will not pay for any loss or damage caused by any of the following, <u>even if they are Covered Causes of Loss</u>, if the building where loss or damage occurs has been "vacant" for more than 60 consecutive days before that loss or damage occurs: (1) <u>Vandalism</u>; (2) Sprinkler Leakage, unless you have protected the system against freezing; (3) Building glass breakage; (4) Discharge or leakage of water; (5) "Theft"; or (6) Attempted "theft". With respect to Covered Causes of Loss other than those listed in Paragraphs (1) through (6) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

(Policy Section A. ("Coverage") 5. ("Limitations") d. (Ex. 4 to Travelers' Combined Mem.) (emphasis added).) During briefing of the motions for summary judgment, Travelers submitted the affidavit of Mr. Thompson, who quoted from his report and added the following opinion: "Based on the evidence I examined in the course of my investigation, and my experience gained in years of investigating different fires, in my opinion, the fire which destroyed the Property was caused by vandalism." (Thompson Aff. ¶ 10.)

## ANALYSIS

No genuine dispute of material facts exist, and the court may rule as a matter of Utah law.

**A.       The Policy's Exclusionary Provision Does Not Bar Coverage of the Fire Damage.**

**1.       Standards of Interpretation**

Under Utah law,[3] the interpretation of an insurance contract is a question of law. Bear River Mut. Ins. Co. v. Williams, 153 P.3d 798, 800 (Utah Ct. App. 2006). When interpreting an insurance contract, the court must read the policy as a whole in an attempt to harmonize and give effect to all of its provisions. First Am. Title Ins. Co. v. J.B. Ranch, 966 P.2d 834, 836 (Utah 1998). If the policy language at issue is ambiguous, the court must liberally construe the language in favor of the insured. S.W. Energy Corp. v. Continental Ins. Co., 974 P.2d 1239, 1242 (Utah 1999). But if the language is not ambiguous, "the court must construe it according to its plain and ordinary meaning," First Am. Title, 966 P.2d at 836, and no presumption in favor of coverage arises. S.W. Energy, 974 P.2d at 1242.

> A policy may be ambiguous if it is unclear, omits terms, or is capable of two or more plausible meanings. However, policy terms are not necessarily ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests. To be contrary, the proposed interpretation must be plausible and reasonable in light of the language used.

Id. (internal citations and quotation marks omitted). See also Saleh v. Farmers Ins. Exch., 133 P.3d 428, 432-33 (Utah 2006) (re-articulating factors to use when determining whether a proposed interpretation is "plausible," and noting that the alternative interpretation must be "'based upon the usual and natural meaning of the language used and may not be the result of a forced or strained construction'" and "must be more than a conjecture but may be less than a

---

[3] The parties agree that Utah law governs the analysis.

certainty"). Travelers has the burden of proving that the Policy exclusion applies here. E.g., LDS Hosp. v. Capitol Life Ins. Co., 765 P.2d 857, 859 (Utah 1988).

### 2. The term "vandalism," when read in the context of the entire Policy, is ambiguous.

The parties do not dispute that Policy Section A.5.d bars payment of claims when the building has been vacant for more than 60 days and the cause of loss is vandalism. The issues are (1) whether the term "vandalism" (not defined in the Policy) is ambiguous; and (2) whether "vandalism" includes arson.

Fort Lane contends that the term "vandalism" is ambiguous when one considers other provisions in the Policy. Specifically, it maintains that the Policy distinguishes between "vandalism" and "fire" as two different types of covered causes of loss, and so it maintains that loss as a result of fire is a different covered loss. Furthermore, Fort Lane contends that there is more than one possible theory of causation, even considering Mr. Thompson's Origin and Cause Report. Fort Lane downplays the value of the expert report, stating that it does not rule out an accident as the cause of the fire:

> The report does not conclude that the fire was intentional or that it was arson,[4] only that it was a "human caused fire set by person or persons unknown." This conclusion does not necessarily follow based upon the information Mr. Thompson provides to support his conclusion, especially since Mr. Thompson does not conclude what the cause of the fire was; only that he thought it was human caused.

(Fort Lane's Mem. Opp'n (Docket No. 39) at 2.) Then, Fort Lane suggests other possible scenarios:

---

[4]Although the report does not contain such a conclusion, Mr. Thompson, in Paragraph 10 of his Affidavit, concludes that vandalism was the cause of the fire.

> Possibilities that involve humans but that are not explored by Mr. Thompson could include but are not limited to, a cigarette that was not properly put out, a carelessly dropped cigarette or match, that a transient or juvenile started a fire to keep warm, and didn't put it out properly, or that sparks or coals from a fire started in a container were kicked or otherwise spread from the container. Mr. Thompson does not state that any accelerant was used, or that there was fuel strategically placed at the scene indicating that someone was trying to burn the house down.

(Id.)

Fort Lane does not present evidence of an expert opining on the issue of whether the fire was intentionally set or accidental. Still, Fort Lane's failure to do so is not necessarily fatal to its claim. See Young v. Fire Ins. Exch., 182 P.3d 911, 919 (Utah Ct. App. 2008) ("Expert testimony was not required to establish a prima facie case that the fire was accidental."). Fort Lane points to gaps in the expert's report and relies heavily on American States Ins. Co. v. Rancho San Marcos Props., LLC, 97 P.3d 775 (Wash. Ct. App. 2004), to support its interpretation of the Policy. As discussed below, the Rancho San Marcos court held in favor of the insured after it interpreted language that was essentially identical to the language in Travelers' Policy.

Travelers, in its defense, contends that Utah follows the majority of courts that have found the term "vandalism" in similar exclusionary provisions to be unambiguous and that have interpreted its ordinary meaning to encompass a claim arising from an arson fire. Specifically, Travelers cites to Bear River Mutual Insurance Company v. Williams, 153 P.3d 798 (Utah Ct. App. 2006), which held that the term "vandalism" in an insurance policy is unambiguous and includes arson. Travelers further maintains that no reasonable inferences can be drawn from the evidence to support the position that the fire damage was accidental rather than the result of vandalism (in common usage, "vandalism" means willful or malicious defacement or destruction

of property[5]).

Although Bear River *appears* to be dispositive of the issue in favor of Travelers, its holding is not as clear as Travelers contends. The opinion does not provide enough information on the policy's provisions, so it is not certain that the Bear River court's finding of no ambiguity would transfer as a matter of law or fact to the case here.

The court in Bear River does hold that the term vandalism is not ambiguous and includes arson in its ordinary meaning.[6] But the Bear River court also distinguished the case upon which Fort Lane relies: American States Ins. Co. v. Rancho San Marcos Props., LLC, 97 P.3d 775, 778 (2004) (interpreting policy's use of terms fire, arson, and vandalism to mean that under the language of that policy, "arson is different from vandalism"). The Bear River court said, "We see no tension between the various terms as used in the policy, and cannot identify the type of conflicting language that has led other courts to find coverage in this situation." 153 P.3d at 801 (emphasis added) (citing Rancho San Marcos). The "type of conflicting language" to which the Bear River court refers is the language analyzed in Rancho San Marcos – language which is essentially identical to the language in the Travelers Policy. In Rancho San Marcos, the court held that the term "vandalism" in the exclusionary provision was ambiguous because the "Specified Causes of Loss" provision separately listed "fire" and "vandalism" as specific covered

---

[5]See Merriam-Webster On-Line Dictionary; Webster's Third New Int'l Dictionary (1971).

[6]The cases finding that arson is included in the definition of vandalism in a "vacant property" exclusion generally are dealing with policies that do not spell out the distinctive covered losses, unlike the Travelers Policy. See Bear River Mut. Ins. Co. v. Williams, 153 P.3d 798 (Utah Ct. App. 2006); Battishill v. Farmers Alliance Ins. Co., 127 P.3d 1111 (N.M. 2006); Costabile v. Metropolitan Prop. & Cas. Ins. Co., 193 F. Supp. 2d 465, 478 (D. Conn. 2002).

8

losses. See 97 P.3d at 777-78. The Rancho San Marcos court then construed the policy in favor of coverage.

For the same reason, this court finds the term "vandalism" to be ambiguous. Faced with ambiguous language and a plausible interpretation from Fort Lane, the court construes that language in favor of the insured. See S.W. Energy Corp., 974 P.2d at 1242 ("If a policy is ambiguous, it is construed liberally in favor of the insured so as to promote the purposes of insurance."); United Capital Corp. v. Travelers Indemnity Co. of Illinois, 237 F. Supp. 2d 270, 274 (E.D.N.Y. 2002) (holding that because policy separately listed "fire" and "vandalism" in covered loss section, the term "vandalism" in the "vacancy exclusion" was ambiguous and so must be construed against insurer). Accordingly, the court finds in favor of coverage for Fort Lane.

B. **Fort Lane's Negligence, Breach of the Implied Covenant, and Unjust Enrichment Claims Fail as a Matter of Law.**

Although the court holds in favor of Fort Lane on the coverage issue, Travelers is entitled to summary judgment as a matter of law on Fort Lane's three remaining claims.

1. Negligence

As Fort Lane concedes, its claim of negligence should be dismissed. (Fort Lane's Mem. Opp'n (Docket No. 39) at 20.) Accordingly, that portion of Travelers summary judgment motion is GRANTED.

2. Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)

Because the undisputed facts show that Travelers' denial of the claim is "fairly debatable," Travelers is entitled to dismissal of the bad faith claim as a matter of law.

9

> If an insurer acts reasonably in denying a claim, then the insurer did not contravene the covenant [of good faith and fair dealing]. The denial of a claim is reasonable if the insured's claim is fairly debatable. Under Utah law, if an insurer denies an "'insured's claim that is fairly debatable, then the insurer is entitled to debate it and cannot beheld to have breached the implied covenant if it chooses to do so.'"

Prince v. Bear River Mut. Ins. Co., 56 P.3d 524, 533-34 (Utah 2002) (internal citations and quotation marks omitted). Whether the denial is "fairly debatable" is a question of law for the court. Young v. Fire Ins. Exch., 182 P.3d 911, 917 (Utah Ct. App. 2008).

Traveler's actions were completely reasonable here. Its interpretation of the Policy, although ultimately rejected by the court, is a reasonable one. Travelers acted responsibly by investigating the fire and hiring an expert to issue a report. There is no evidence that Travelers undermined Fort Lane's ability to recover under the Policy. Instead, Travelers relied on a valid expert report and other undisputed information to deny the claim. Accordingly, Travelers is entitled to summary judgment on Fort Lane's claim for breach of the implied covenant of good faith and fair dealing.

    3.    <u>Unjust Enrichment</u>

Unjust enrichment[7] is an equitable remedy, and to maintain such a claim Fort Lane must demonstrate that its legal remedies are inadequate. Thorpe v. Washington City, 243 P.3d 500, 507 (Utah Ct. App. 2010). "A claim for unjust enrichment is an action brought in restitution, and a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable

---

[7]To succeed on an unjust enrichment claim, a plaintiff must establish that it conferred a benefit on another (the "conferee"), that the conferee was aware of the benefit conferred, and that the conferee accepted or retained that benefit under circumstances that would be inequitable for it to retain the benefit without payment of the value of the benefit. Espinoza v. Gold Cross Servs., Inc., 234 P.3d 156, 159 (Utah Ct. App. 2010).

contract governing the rights and obligations of the parties relating to the conduct at issue." Espinoza v. Gold Cross Servs., Inc., 234 P.3d 156, 158-59 (Utah Ct. App. 2010). Because Fort Lane has a valid insurance contract with Travelers, its legal remedies are adequate and it is not entitled to recovery under a theory of unjust enrichment. Accordingly, that claim is dismissed.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. The court finds that the loss was a covered loss and the exclusion upon which Travelers relied in denying coverage does not, as a matter of law, bar coverage in this case. Accordingly, Fort Lane's Motion for Partial Summary Judgment (Docket No. 22) is GRANTED.

2. Travelers' Motion for Summary Judgment (Docket No. 19) is GRANTED IN PART AND DENIED IN PART. Specifically, Traveler's interpretation of the coverage language is erroneous as a matter of law, but Fort Lane's claims for negligence, breach of the implied covenant of good faith and fair dealing, and unjust enrichment are dismissed.

3. Plaintiffs' Motion in Limine (Docket No. 17) and Motion to Strike (Docket No. 32) are DENIED WITHOUT PREJUDICE.

4. The court directs the parties to file, within 14 days of the date of this Order, a status report detailing issues, if any, that remain to be litigated.

DATED this 27th day of July, 2011.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
United States District Court Judge